IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ZAYO GROUP, LLC,** | : | CIVIL ACTION NO. 1:21-CV-600 |
| | : | |
| Plaintiff | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **NORFOLK SOUTHERN RAILWAY COMPANY,** | : | |
| | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

Defendant Norfolk Southern Railway Company ("Norfolk Southern") removed the present action from the Dauphin County Court of Common Pleas. Plaintiff Zayo Group, LLC ("Zayo"), now seeks to remand the action back to state court for lack of subject matter jurisdiction.  We will grant Zayo's motion to remand.

### I. Factual Background & Procedural History

Zayo is a telecommunications company headquartered in Boulder, Colorado. (See Doc. 1-3 ¶¶ 1-2, 4; Doc. 1 ¶ 4).  The federal government awarded Zayo a contract to provide fiber optic service to Central Dauphin School District in Dauphin County, Pennsylvania.  (See Doc. 1-3 ¶¶ 4-5, 44).  Zayo alleges completing the contract necessitates stringing a fiber optic wire along a 0.89-mile stretch of telephone poles located on Norfolk Southern's property and running alongside Norfolk Southern's railroad tracks.  (See Doc. 1-3 ¶¶ 5-6, 13-14, 49; Doc. 1-3, Ex. D). The telephone poles belong to an electric company which installed the poles pursuant to a revocable licensing agreement with Norfolk Southern.  (See Doc. 1-3 ¶¶ 15-16; Doc. 1 ¶ 2). Zayo reached an agreement with the electric company that

allows Zayo to attach the fiber optic wire to the electric company's poles, subject to Norfolk Southern's approval. (See Doc. 1-3 ¶¶ 17-20).

Norfolk Southern offered Zayo permission to affix its fiber optic wire in exchange for $75,000 and execution of a licensing agreement. (See Doc. 1-3 ¶¶ 7-8, 20; Doc. 1 ¶ 3). Zayo balked at Norfolk Southern's asking price and countered with an offer of $20,000. (See Doc. 1-3 ¶¶ 9-10; Doc. 1 ¶ 3). Norfolk Southern refused to lower their price. (See Doc. 1-3 ¶¶ 9-10; Doc. 1 ¶ 3). Unable to come to an agreement, Zayo filed a condemnation action against Norfolk Southern in the Dauphin County Court of Common Pleas, seeking an aerial easement subordinate to the electric company's licensing agreement and a temporary construction easement. (See Doc. 1-2 ¶¶ 1-3; Doc. 1 ¶¶ 1-2; Doc. 1-3 ¶¶ 11-12, 21-27). The requested aerial easement consists of a ten-foot-wide corridor running alongside Norfolk Southern's railroad track for 0.89 miles. (See Doc. 1-3 ¶¶ 24-25; Doc. 1-3, Ex. D).

Norfolk Southern timely removed the condemnation action to this court claiming federal question and diversity jurisdiction under 28 U.S.C. § 1331 and § 1332(a), respectively. Norfolk Southern then promptly filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Zayo responded by filing a motion to remand the matter back to state court for lack of subject matter jurisdiction. Both motions are now fully briefed and ripe for disposition.

**II.    Legal Standard**

Under 28 U.S.C. § 1441, a defendant may remove an action brought in state court to federal district court when the claims fall within the federal court's original

jurisdiction.  See 28 U.S.C. § 1441(a).  A plaintiff may challenge removal for lack of jurisdiction by moving to remand the matter to state court.  See id. § 1447(c).  Such motions may be filed at any time before final judgment is entered.  See id.  If the district court indeed lacks subject matter jurisdiction, it must remand to the state court from which the action was removed.  See id.  Statutes permitting removal "are to be strictly construed against removal and all doubts should be resolved in favor of remand."  Manning v. Merrill Lynch Pierce Fenner & Smith, Inc., 772 F.3d 158, 162 (3d Cir. 2014) (quoting Brown v. Jevic, 575 F.3d 322, 326 (3d Cir. 2009)).

As the party asserting jurisdiction, the defendant bears the burden of proving the matter is properly before the federal court, *viz.*, that the court has either federal question or diversity jurisdiction over the suit.  See Frederico v. Home Depot, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted); Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (same)).  Federal question jurisdiction exists if the state-law claim in the complaint states an actual, disputed, and substantial issue related to federal law that the federal court can resolve without disrupting the balance of power between the federal and state courts.  See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).  A state-law claim raises a federal issue when it involves a dispute over the "validity, construction, or effect" of a federal statute or law.  See id. at 313 (quoting Shulthis v. McDougal, 225 U.S. 561, 569 (1912)).  To invoke diversity jurisdiction, the defendant must establish that the matter is between citizens of different states and that the amount in controversy, exclusive of interest and costs, exceeds $75,000.  See 28 U.S.C. § 1332(a).

**III.   Discussion**

Zayo requests we remand this matter to state court for lack of subject matter jurisdiction.[1]  Norfolk Southern insists our court has both federal question and diversity jurisdiction over the parties' eminent domain dispute.  We will address the two proposed grounds for jurisdiction *seriatim*.

**A.   Federal Question Jurisdiction**

The well-pleaded complaint rule governs whether a federal court has federal question jurisdiction over a particular matter.  See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003) (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152-53 (1908)).  Under that rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112-113 (1936)).  The rule generally bars removal of cases to federal court where the federal question arises out of the defendant's defense—including preemption defenses.  See Beneficial Nat'l Bank, 539 U.S. at 6 (citing Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for Southern Cal., 463 U.S. 1 (1983)).  However, the Supreme Court of the United States has carved out a narrow exception to the well-pleaded complaint rule for when "the

---

[1] We turn to Zayo's motion to remand before Norfolk Southern's motion to dismiss because district courts must establish jurisdiction over a matter and its parties before reaching merits determinations.  See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007) (quoting Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94 (1998)).

4

pre-emptive force of a [federal] statute is so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim." See Caterpillar, 482 U.S. at 393 (internal quotation marks omitted). When federal law "completely pre-empts" an area of state law, claims under the preempted state law "are necessarily federal in character." See Maglioli v. All. HC Holdings LLC, 16 F.4th 393, 407 (3d Cir. 2021) (quoting Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987)).

Norfolk Southern contends federal question jurisdiction exists over this matter because the Interstate Commerce Clause Termination Act ("ICCTA"), see 49 U.S.C. § 10101 *et seq.*, completely preempts Pennsylvania's Eminent Domain Code, 26 PA. CONS. STAT. § 101 *et seq.* (See Doc. 1 at 1, ¶ 8; Doc. 15 at 3-10). The ICCTA vests the federal Surface Transportation Board ("STB") with "exclusive" jurisdiction to decide disputes involving, *inter alia*, transportation by rail carriers, the services and facilities of such carriers, and the acquisition of railroad facilities. See 49 U.S.C. § 10501. But the ICCTA does not preempt all state regulation affecting railroads. See N.Y. Susquehanna & W. Ry. Corp. v. Jackson, 500 F.3d 238, 252 (3d Cir. 2007). *Per contra*, it preempts only those state laws and regulations which "may reasonably be said to have the effect of managing or governing rail transportation." See id. Laws and regulations bearing only a "remote or incidental effect on rail transportation" are not preempted. See id. at 252 (citation omitted). Regulation is permissible so long as "(1) [the regulation] is not unreasonably burdensome, and (2) it does not discriminate against railroads." See id. at 252-54 (citing Maumee & W. R.R. Corp. & RNW Ventures, LLC—Petition for Declaratory

5

Ord., No. 34354, 2004 WL 395835, at *2 (Surface Transp. Bd. Mar. 3, 2004).  Norfolk Southern proceeds under the first prong, arguing an eminent domain proceeding seeking an aerial easement alongside a railroad track unreasonably burdens railroad transportation.  (See Doc. 15 at 3-10).

Our court of appeals has identified two forms of regulation as giving rise to an undue burden: "draconian" regulations that prevent the railroad from carrying out its normal business in a "sensible fashion," and vague regulations likely to create "open-ended delays" in railroad transportation.  See id. at 254 (citation omitted).  The court of appeals has not addressed whether eminent domain proceedings are categorically preempted, but the STB has considered the question on several occasions.  The STB has held that the ICCTA does not preempt state-law condemnation proceedings when they seek to acquire "routine, non-conflicting uses, such as non-exclusive easements for . . . wire crossings . . . so long as they would not impede rail operations or pose undue safety risks."  See Maumee, 2004 WL 395835, at *2; Lincoln Lumber Co.—Petition for Declaratory Ord.—Condemnation of R.R. Right-of-Way for a Storm Sewer, No. FIN 34915, 2007 WL 2299735, at *3 (Surface Transp. Bd. Aug. 13, 2007).  Instead, the STB views nonexclusive easements as "generally best addressed by state courts applying state law" because they do not prevent the railroad from accessing the property in question.  See Jie Ao & Xin Zhou—Petition for Declaratory Ord., No. FD 35539, 2012 WL 2047726, at *8 (Surface Transp. Bd. June 6, 2012) (citing Maumee, 2004 WL 395835, at *2 ("These crossing cases are typically resolved in state courts.")).  When the STB has found easements to be an unreasonable burden, it has relied on the

6

easement having clear, present, and tangible effects on the railroad's operation, *i.e.*, preventing construction of a necessary embankment, accessing a vital retaining wall, or blocking modernization of a signal structure.  See, e.g., Norfolk S. Ry. Co. & the Ala. Great S. R.R. Co.—Petition for Declaratory Ord., No. FIN 35196, 2010 WL 691256, at *3-4 (Surface Transp. Bd. Feb. 26, 2010).

The aerial easement sought by Zayo does not cross over the railroad tracks; it merely runs parallel to the track for less than a mile.  (See Doc. 1-2 ¶ 2; Doc. 1-2, Ex. 1; Doc. 1-3, Ex. D).  The easement is nonexclusive.  (See Doc. 1-3 ¶¶ 25-26).  It does not require placement of new telephone poles or any other structural changes.  (See id. ¶¶ 18-19, 26-29).  The only argument Norfolk Southern offers as to how the aerial easement might burden the railroad hinges on a speculative future scenario where the telephone poles need to be moved to accommodate a shift in the rail lines and Zayo refuses to agree to a corresponding shift in the wires.  (See Doc. 15 at 6-10).  A hypothetical future inconvenience does not resemble the clear, present, and tangible impacts the STB has deemed an undue burden.[2]  See Norfolk S. Ry. Co., 2010 WL 691256, at *3-4; see also N.Y. Susquehanna, 500 F.3d at 254.  Norfolk Southern has not meet its burden of establishing the state-law condemnation at issue is preempted by the ICCTA.  We do not have federal question jurisdiction over this dispute.

**B.     Diversity Jurisdiction**

---

[2] Any risk of interference or delay is further alleviated by Zayo's agreeing to stipulate to easement terms addressing Norfolk Southern's concerns about pole maintenance and wire relocation.  (See Doc. 17 at 2-3; Doc. 17-1 ¶ 6).

Norfolk Southern alternatively suggests our court has diversity jurisdiction over its dispute with Zayo. (See Doc. 1 at 1, ¶¶ 4-6; Doc. 15 at 11-14). To establish diversity jurisdiction, Norfolk Southern must demonstrate this matter is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000. See 28 U.S.C. § 1332(a). The parties agree diversity exists. (See Doc. 6 at 11). The only dispute is whether the matter satisfies the amount-in-controversy requirement.

Ordinarily, the court determines the amount of controversy by looking at the sum demanded in the complaint. See 28 U.S.C. § 1446(c)(2); Dart Cherokee Basin Operating Co. v. Owens, 574 U.S. 81, 84 (2014). If, due to state-court practices, a complaint is silent as to the precise damages demanded, the court looks to the amount in controversy claimed in the notice of removal. See 28 U.S.C. § 1446(c)(2)(A)(ii); Dart Cherokee, 574 U.S. at 84. Absent a challenge from the plaintiff, the court must accept the amount asserted in the notice of removal. See Dart Cherokee, 574 U.S. at 84, 88. If the plaintiff contests the amount claimed, both sides submit proof and the court determines, by a preponderance of the evidence, whether the amount in controversy exceeds the jurisdictional threshold. See id. at 88.

Norfolk Southern claims in its notice of removal the value of the desired aerial easement exceeds $75,000. (See Doc. 1 ¶ 6). It bases this valuation on the compensation the company received for a "comparable license at the same location in an arm's length transaction." (See id.) The only evidence Norfolk Southern provides substantiating its assertion is an affidavit from Solomon Jackson, Norfolk

Southern's director of real estate. (See Doc. 15-1). According to Jackson, another telecommunications company paid in "in excess of $75,000" for a license agreement for a "project identical in all significant aspects," *i.e.*, placing fiber optic cable on telephone poles at a location coinciding with Zayo's easement. (See id. ¶¶ 4-6). He also claims the price paid by the other company "is consistent with fees paid by other, similarly situated third parties seeking to locate their utilities within [Norfolk Southern]'s railroad right-of-way." (See id. ¶ 6).

Zayo contends the easement is worth a fraction of the amount Norfolk Southern suggests. (See Doc. 6 at 12-13). In support of motion to remand, Zayo relies on a 71-page valuation prepared by a third-party land appraiser submitted in connection with the state condemnation proceeding. (See Doc. 1-3, Ex. E). The appraiser physically inspected the property, (see id., Ex. E at 6), considered local economic conditions, (see id., Ex. E at 12-19), compared several comparable properties, (see id., Ex. E at 31-35, App. E), interviewed experts in corridor valuation, (see id., Ex. E at 36), and applied a sophisticated valuation metric, (see id., Ex. E at 25-41). The valuation report concludes the aerial easement is worth a total of $5,132. (See id., Ex. E at 41).

We find, by the preponderance of the evidence, the value of the proposed easement is less than $75,000. The professional appraisal provided by Zayo is more persuasive and authoritative than the attestations of Norfolk Southern's employee. Even if the fair market value of the aerial easement is ten times the value given in Zayo's appraisal, the amount in controversy would still fall well short of the $75,000 threshold. Norfolk Southern has not met its burden of establishing our court has

diversity jurisdiction over this matter.  As we do not have federal question or diversity jurisdiction, we must remand this matter to the Dauphin County Court of Common Pleas.

### C. Attorneys' Fees

Zayo asks the court to award attorneys' fees incurred in litigating the instant motion.  (See Doc. 5 ¶ 10; Doc. 6 at 17-18).  Under 28 U.S.C. § 1447(c), a remand order "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  28 U.S.C. § 1447(c).  As a general rule, courts may award attorneys' fees under Section 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal."  See League of Women's Voters of Pa. v. Pennsylvania, 921 F.3d 378, 383 (3d Cir. 2019) (quoting Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005)).  We find Norfolk Southern's removal was not objectively unreasonable under the circumstances.  Therefore, Zayo is not entitled to attorneys' fees.

### IV. Conclusion

For the reasons set forth herein, we will grant Zayo's motion to remand.  We will also deny Norfolk Southern's motion to dismiss as moot.  An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    January 25, 2022

10